# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br>　　vs.<br><br>ROSA LINDA CUEVAS,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 05CR2193 (IEG)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR INTERFERENCE WITH A DEFENSE WITNESS**<br><br>[Doc. No. 54] |

　　　　Presently before the Court is Rosa Linda Cuevas' ("defendant") motion to dismiss the indictment for interference with a defense witness, unless the prosecution grants immunity to that witness. (Doc. No. 54.) For the following reasons, the Court denies defendant's motion.

## BACKGROUND

**A.　Factual Background**

　　　　On November 24, 2005 at 6:21 a.m., Cuevas and Betsaida Castaneda attempted to enter the United States at the San Ysidro Port of Entry. (Govt. Brief at 2.) After a brief examination of the car, the primary inspector found a non-factory compartment behind the rear seat containing an adult male, Jahuri Francisco Garcia-Perez. (Id.)

　　　　Cuevas denied knowing that Garcia-Perez was hidden in the car. (Id. at 3.) Cuevas said she had driven the car at Castaneda's urging because Castaneda did not have a valid driver's license. (Id.) Cuevas later admitted to a customs officer that she had falsely told the primary

1  inspector the car belonged to her boyfriend.  (Id.)  Cuevas made this statement to the primary
2  inspector at the instruction of an unidentified male who had presented Cuevas with the car in
3  Mexico.  (Id.)
4       Garcia-Perez told the agent that he is a citizen of Mexico and has no legal documents to
5  enter or remain in the United States.  (Id. at 4.)  He also said his uncle had arranged to pay money
6  to transporters when he arrived in the United States.  (Id.)
7  **B.   Procedural Background**
8       The grand jury had originally charged both Cuevas and Castaneda with bringing in illegal
9  aliens for financial gain and bringing in illegal aliens without presentation.  (Doc. No. 1.)
10      On July 17, 2006, the Court severed the trials, ordered the suppression of Castaneda's
11 statements, and set trial dates for both defendants.  (Doc. No. 44.)  On August 3, 2006, the
12 Government dismissed without prejudice its indictment against Castaneda.  (Doc. No. 45.)
13      On August 16, 2006, the grand jury returned a Superseding Indictment against Cuevas,
14 adding a third count for making a false statement to a federal officer.  (Doc. No. 49.)
15      On September 11, 2006, defendant moved, inter alia, to dismiss the Superseding
16 Indictment for interference with a defense witness.  (Doc. No. 54.)  On September 19, 2006, the
17 government filed a response and opposition.  (Doc. No. 55.)  On September 25, 2006, the Court
18 heard oral argument.

19                                  **DISCUSSION**

20      Cuevas moves to dismiss the Superseding Indictment, unless the Government grants
21 immunity to Castaneda.  Having reviewed the briefs and cited cases, the Court construes
22 defendant's request as a motion to compel the government to grant use immunity to Castaneda.
23      A defendant has "no absolute right" for a witness to be granted immunity.  United States v.
24 Patterson, 819 F.2d 1495, 1505 (9th Cir. 1987).  Therefore, a criminal defendant generally cannot
25 compel the government to grant immunity to a witness.  United States v. Young, 86 F.3d 944, 947
26 (9th Cir. 1996).  The Ninth Circuit has carved out an exception, however, where prosecutorial
27 misconduct "intentionally distort[s]" the fact-finding process, and effectively denies the defendant
28 a fair trial.  United States v. Westerdahl, 945 F.2d 1083, 1086 (9th Cir. 1991).  The two-part test

for prosecutorial misconduct requires the defendant to show that (1) the non-immunized witness's testimony would be relevant, and (2) the government "distorted the judicial fact-finding process" by denying immunity. Id.

The first prong is easy to satisfy because any relevant evidence, whether or not "clearly exculpatory" or "essential to the defense," satisfies the test. Id.

Early case law under the second prong looked for instances when prosecutors "acted with a deliberate intention." United States v. Lord, 711 F.2d 887, 891 (9th Cir. 1983). In Lord, for example, a non-immunized witness was prepared to testify for the defendant until the prosecutor threatened to prosecute the witness, depending on how the witness testified. Id. at 889. The Ninth Circuit analyzed these events to "suggest that prosecutorial misconduct caused [the witness] to invoke his fifth amendment privilege against self-incrimination." Id. at 891; see also United States v. Montoya, 945 F.2d 1068, 1078 (9th Cir. 1991) (finding no prosecutorial misconduct because witness decided to invoke Fifth Amendment privilege without "coercion or prompting by the Government"), abrogated on other grounds by McCormick v. United States, 500 U.S. 257 (1991).

Subsequent cases expanded the scope of prosecutorial misconduct beyond "affirmative actions to prevent defense witnesses from testifying." See Westerdahl, 945 F.2d at 1086. In Westerdahl, the Ninth Circuit found a potential distortion of the fact-finding process when the government granted immunity to two of its witnesses, negotiated a generous plea bargain to a third witness, but denied immunity to a defense witness who would have directly contradicted the government witnesses' testimony. Id. at 1087; see United States v. Young, 86 F.3d 944, 948 (9th Cir. 1996) (government granted generous plea agreements to four of its witnesses, and immunity to two others, but denied immunity for defense's only impeachment witness). However, good-faith litigation strategy does not amount to a "substantial interference with the defense witness's free and unhampered determination to testify." Williams v. Woodford, 384 F.3d 567, 602 (9th Cir. 2004) (finding no prosecutorial misconduct where defense witness asserted Fifth Amendment privilege a week after indictment on well-founded perjury charges).

Applied to these facts, defendant easily satisfies the first prong. If Castaneda takes the stand, she would provide relevant testimony to negate Cuevas' mens rea (i.e., no intent to further

illegal activity, and no knowledge of Garcia-Perez's presence in the car). See Westerdahl, 945 F.2d at 1086.

However, defendant does not satisfy the second prong because she does not prove affirmative acts of prosecutorial misconduct or grants of selective immunity to prevent Castaneda's testimony. Defendant merely alleges that the government effectively pressured Castaneda into the decision not to testify by acquiescing in the severance of trials, dismissing her case without prejudice, and, in sum, putting Castaneda at risk of self-incrimination if she testifies for Cuevas. Defendant emphasizes an exchange at Cuevas' arraignment, when the government indicated it did not expect Castaneda to testify for Cuevas since it had dismissed Castaneda's case without prejudice. Also, Castaneda is now being advised by counsel to invoke her Fifth Amendment privilege rather than testify at Cuevas' trial.

These allegations provide no indication that the government "intimidate[d] or harasse[d]" Castaneda to discourage her testimony. Williams, 384 F.3d at 601. As a practical matter, if the Government had concocted such conspiratorial litigation tactics, it would not have written four pages in vehement opposition to the motion to sever the trials. (See Doc. No. 17, pp. 6-9.) The government further explains it dismissed Castaneda's indictment because "the bulk of the evidence against Castaneda lay in her fishy statements." (Govt. Brief, at 4.) Once the Court had suppressed those statements, the government felt it lacked sufficient evidence to go forward. The government dismissed without prejudice because it intends to re-indict Castaneda when and if its investigation uncovers other sufficient evidence.

Defendant's exasperation with the government's litigation strategy is no grounds for this Court to compel the government to grant immunity to Castaneda. Prosecutorial discretion allows the government to "refuse[] to grant use immunity to a defense witness who has been indicted or is the subject of a criminal investigation." Williams, 384 F.3d at 602 (citing case law in accord from four circuit courts of appeal). Furthermore, in the absence of prosecutorial misconduct, the defendant cannot take out her frustration on the government when a potential defense witness independently decides to assert her Fifth Amendment right. Montoya, 945 F.2d at 1078.

Nor do these facts provide any evidence of selective immunity. The government explained

1  at oral argument that Garcia-Perez may testify at trial, but has definitely not been granted
2  immunity. Even if the government had granted Garcia-Perez immunity, defendant would still have
3  to allege a direct contradiction in testimony to make out the prima facie case of intentional
4  distortion of the fact-finding process. United States v. Duran, 189 F.3d 1071, 1087 (9th Cir. 1999)
5  (quoting Westerdahl, 945 F.2d at 1087).  However, defendant has not shown that Castaneda's
6  testimony for the defense would "directly contradict[]" Garcia-Perez's testimony for the
7  government.[1]

8  Because defendant has not made out the second prong of the test for prosecutorial
9  misconduct, this Court will not force the government to choose between dismissing the indictment
10 or granting immunity to Castaneda.[2]

11 **CONCLUSION**

12 For the aforementioned reasons, the Court hereby **DENIES** defendant's motion to dismiss
13 the Superseding Indictment for interference with a defense witness [54-1].

14 **IT IS SO ORDERED.**

15

16 **DATED: October 10, 2006**

17                                         *Irma E. Gonzalez*
                                         **IRMA E. GONZALEZ, Chief Judge**
18                                         **United States District Court**

---

[1] Even if Castaneda's testimony would directly contradict Garcia-Perez's testimony, the Court could still potentially distinguish these facts from other cases in which the Ninth Circuit remanded for an evidentiary hearing on the government's intentional distortion.  In precedent cases, the government's proof relied heavily on the testimony of the witnesses who had received immunity or entered into favorable plea agreements. Young, 86 F.3d at 948; Westerdahl, 945 F.2d at 1087. Here, by contrast, Garcia-Perez, a single witness, will not be the government's star by a long shot. Instead, the government plans to rely chiefly on the testimony of the officers who interviewed the defendant and defendant's own post-Miranda statements.

[2] Even if defendant had satisfied its burden under the two-prong test, the Court would only have to conduct an evidentiary hearing to determine whether the government, in fact, "denied immunity with the intent to distort the fact-finding process." Young, 86 F.3d at 948. The proper recourse would **not** be an outright dismissal of the Superseding Indictment.